IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Garrett D. Hall,<br><br>             Plaintiff,<br><br>v.<br><br>Summit Fire District, *et al.*,<br><br>             Defendants. | No. CV-15-08189-PCT-JJT<br><br>**ORDER** |

At issue is Defendants Summit Fire District ("the District"), the Summit Fire District Board ("the Board"), Howard Nott, Jim Doskocil, Jim Newkirk, Rick Parker, Bill Stoddard, and Don Howard's (collectively, "Defendants") Motion for Summary Judgment (Doc. 88, Defs' MSJ), to which Plaintiff Garett Hall filed a Response (Doc. 94, Resp.), and to which Defendants filed a Reply (Doc. 98, Reply). The Court finds the Motion appropriate for decision without oral argument. *See* LRCIV 7.2(f). The Court grants in part and denies in part Defendants' Motion.

**I.  BACKGROUND**

Located in Flagstaff, Arizona, the District is political subdivision of the State of Arizona. An elected five-person Board provides general oversight for the District; however, the Board appoints a Fire Chief who manages the District's day-to-day operations. During the relevant times in this matter, Don Howard served as the Chief of the District and Defendants Nott, Doskocil, Newkirk, Parker, and Stoddard served as the elected members of the Board.

In 2006, the District hired Hall as a firefighter. (Doc. 89, Defs' Separate Statement of Facts "SSOF" ¶ 20.) Hall remained in that role until 2009 when Chief Howard promoted Hall to the role of Acting Fire Captain. (Defs' SSOF ¶ 21.) The promotion became permanent in 2013 when Chief Howard formally promoted Hall to Captain. (Defs' SSOF ¶ 21.) These promotions afforded Hall both an increase in salary and responsibility, as he took a leadership role in supervising personnel on duty. (Defs' SSOF ¶¶ 76, 79.)

At the outset of his employment, Hall also joined the Local 1505 firefighters' union. (Doc. 89-1, Defs' SSOF Ex. 7, Hall Dep. 310:2-6.) Hall actively participated in the union's activities as he rose through the District's ranks, resulting in his election as a union Trustee in 2009. (Hall Dep. 311:4-25.). Beginning in the summer of 2013, the union entered into negotiations with the District over a "Memorandum of Understanding," which was to result in official recognition of the Local 1505 by the District for the purpose of collective bargaining. (Doc. 95-7, Pl's Controverting Statements of Fact "CSOF" Ex. G, Hall Decl. ¶¶ 12–13.) As a Trustee of the union, Hall was heavily involved in these negotiations. (Hall Decl. ¶ 12.) Although the back-and-forth between the union and the District was contentious, the two sides ultimately reached a final agreement on May 20, 2014. (Doc. 89-1, Defs' SSOF Ex. 2, Howard Dep. 126:8-12.)

### A. Hall's Disability and Diagnosis

Around 2:30 a.m. on January 7, 2014, Hall, along with firefighters on his crew, responded to an emergency call about an infant in distress at a Flagstaff residence. Upon arriving, Hall found the infant was unconscious and without a pulse. The crew transported the child to the Flagstaff Medical Center as Hall provided lifesaving measures; however, the child was pronounced dead upon arrival. After a completing a mandatory incident report, Hall returned to the firehouse to finish the remainder of his shift. That afternoon, the station received another call from the same residence from that morning. Again, Hall responded with his crew to find another dire situation, as the mother of the deceased infant had barricaded herself in a bathroom and ingested a bottle

of medication in an attempt at suicide. Emergency personnel swiftly administered aid and transported the mother to the hospital, where she would recover. The events, however, would have a traumatic effect on Hall.

Shortly after the January 7th incidents, Hall began meeting with a psychologist, Kelly Sieczkowski, provided by the District through the Flagstaff Child and Family Counseling Center. Hall, however, remained on the job at that time. On April 6, 2014, Hall was taken to the hospital after experiencing chest pains and stress while on-duty. (Defs' SSOF ¶ 32–33.) The hospital released Hall after an evaluation, and he called in to work sick the next day. (Defs' SSOF ¶ 35.) After determining that he needed time to recuperate, Hall submitted an application for leave under the Family and Medical Leave Act ("FMLA") on April 9. In conjunction with Hall's application for leave, Sieczkowski submitted documentation to the District indicating that Hall was experiencing symptoms related to Post-Traumatic Stress Disorder ("PTSD"). (Defs' SSOF ¶ 37.) The District approved Hall's request, and his FMLA leave commenced on April 12. Because Hall had taken FMLA leave on a previous occasion for a reason unrelated to his PTSD, he was eligible for 360 hours of leave. (Defs' SSOF ¶ 38.)

### B. Hall's Medical Leave and Ultimate Discharge

While on FMLA leave, Hall began seeing a licensed psychiatrist, Dr. Abigail Isakson, who formally diagnosed Hall with PTSD. (Defs' SSOF ¶ 39.) During this time, he also submitted a claim for worker's compensation with the District's insurer, CopperPoint Mutual Insurance Company (Defs' SSOF ¶ 40.) CopperPoint, however, would deny Hall's claim on July 23, 2014. (Defs' SSOF ¶ 43.) Although Hall would appeal his denial, he entered into a settlement agreement with CopperPoint in 2015, dropping his appeal of the denial of the claim. (Doc. 89-3, Defs' SSOF Ex. 15)

As Hall's initial medical leave drew to an end, it was clear that Hall remained unable to return to his role as Captain in the same capacity he had before his diagnosis. In an effort to determine how to proceed, Chief Howard sent Hall a letter on June 12, 2014. (Doc. 89-4, Defs' SSOF Ex. 19.) In that letter, Chief Howard laid out several options for

Hall, including taking leave under the District's leave of absence policy or proceeding under the Americans with Disabilities Act (ADA). (Defs' SSOF Ex. 19.) Howard also noted that Hall would use up his sick and vacation time as of June 29th. (Defs' SSOF Ex. 19.) Defendants allege that Hall failed to ever respond to this letter, and Hall does not recall doing so. (Defs' SSOF ¶ 57, Pls' CSOF ¶ 57.) Hall, however, alleges that he met with Chief Howard shortly after receiving the letter. (Doc. 95-2, Pls' CSOF Ex. B, Hall Tr. 254:22-255:14.) During that meeting, Hall recalls first requesting the opportunity to perform light duty assignments for the District in lieu of his regular duties. (Hall Dep. 255:2-9.)

On July 17, 2014, Chief Howard wrote to Hall again to reiterate the options available to Hall. (Doc. 89-4, Defs' SSOF Ex. 22.) In that letter, Chief Howard laid out several options for Hall including taking a medical retirement, taking a leave of absence under the District's policies, or resigning. (Defs' SSOF Ex. 22.) If Hall did not make a decision, Chief Howard noted that he would fire Hall on July 31. (Defs' SSOF Ex. 22.) Hall, however, did not respond to Chief Howard's letter until sending an email on July 30, 2014. In his response, Hall reiterated a desire "to work and do any tasks for the organization that a doctor thinks is appropriate." (Doc 89-4, Defs' SSOF Ex. 23.) The next day, Hall provided Chief Howard with a completed Request for Reasonable Accommodation form which the District had provided. (Doc. 89-3, Defs' SSOF Ex. 12.) The two-page, handwritten form was completed by Dr. Isakson, who concluded that no work related accommodations "at this time are possible to allow [Hall] to return to his previous line of work." (Defs' SSOF Ex. 12.) After receiving the completed form, Chief Howard fired Hall effective July 31, 2014. (Doc. 89-2, Defs' SSOF Ex. 1 ¶ 33.)

Hall filed suit in the Coconino County Superior Court on May 26, 2015. Defendants timely removed to this Court on September 24, 2015. On December 4, 2015, Hall filed his Second Amended Complaint, which is the operative Complaint for the purpose of summary judgment. In the Second Amended Complaint, Hall alleges five claims against each of the Defendants in this action. First, Hall alleges that each of the

Defendants discriminated against him in violation of the ADA by failing to provide a reasonable accommodation and for firing Hall due to his disability. (2d Am. Compl. ¶¶ 49–64.) Hall additionally alleges that each Defendant retaliated against him for requesting a reasonable accommodation in violation of the ADA. (2d Am. Compl.¶¶ 65– 71.) Next, Hall brings a claim under 42 U.S.C. § 1983 for the Defendants' retaliation against Hall's right to association with a union. (2d Am. Compl. ¶¶ 72–80.) Finally, Hall alleges a state law contract claim for the Defendants' breach of the covenant of good faith and fair dealing. (2d Am. Compl. ¶¶ 81–87.)

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

Defendants move for summary judgment on each of Hall's claims. The Court will first address the Motion with regard to Hall's claims under the ADA before moving to Hall's constitutional and state law claims.

### A. Hall's ADA Claims

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). Claims brought by an employee under the ADA are "subject to the burden-shifting framework" laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). Under the *McDonell Douglas* framework, the employee bears "the initial burden of establishing a *prima facie* case of discrimination." *Id.* Thus, the employee must present facts demonstrating that (1) he "is a disabled person within the meaning of the ADA"; (2) that he can "perform the essential functions" of his job "with or without a reasonable accommodation"; and (3) that his employer terminated him because of his disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246–47 (9th Cir. 1999).

If the plaintiff is successful, the burden shifts to his employer "to provide a legitimate, nondiscriminatory [] reason for the adverse employment action." *Id.*; *Metoyer v. Chassman*, 504 F.3d 919, 931 n.6 (9th Cir. 2007). Once the employer articulates such a reason, "the presumption of discrimination drops out of the picture." *Metoyer*, 504 F.3d at 931 n.6. The burden then shifts back to the plaintiff to prove that the reason is merely pretextual. *Id.*

### 1. Counts I–II: Unlawful Discrimination Under the ADA

In the Second Amended Complaint, Hall alleges that the District discriminated against him both by failing to provide a reasonable accommodation for his PTSD and firing him because of his PTSD diagnosis.[1] (2d Am. Compl. ¶¶ 49–64.) Defendants move for summary judgment on both claims arguing (1) that Hall fails to prove a *prima facie* case of discrimination and (2) that Defendants fired Hall for a legitimate, non-discriminatory reason. (Defs' MSJ at 9–13.)

When an employee requests an accommodation or the employer becomes aware of the need for one, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)). Although an employee must "inform the employer of the need for an adjustment due to a medical condition," he need not use any "particular language" to do so. *Id.* If a reasonable accommodation would have been possible, "an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Barnett*, 228 F.3d at 1116.

The scope of reasonable accommodations under the ADA is broad and includes "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C § 12111(9)(B). An employer does not have a duty to "provide an employee the accommodation he requests or prefers" and must only "provide some reasonable accommodation" for the employee. *Zivkovic*, 302 F.3d at 1089. Employers additionally are not required to "create a new position to accommodate a disabled employee." *Wellington v. Lyon Cty. Sch. Dist.*, 187 F.3d 1150, 1155 (9th Cir. 1999). In some cases, placing an employee on medical leave may be a reasonable accommodation. *See Dark v. Curry Cty.*, 451 F.3d 1078, 1090 (9th Cir. 2006). An employee, however, is

---

[1] Although Hall styles his claims as separate causes of action, both a failure to accommodate and a discharge due to a disability are acts of "discrimination" under the ADA. The Court therefore addresses the claims in conjunction.

not required "to show that a leave of absence is certain or even likely to be successful" in treating the disability for it to be a reasonable accommodation. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001). Although leave "of unspecified duration may not be a reasonable accommodation . . . where the employee will not be able to return to his former position and cannot state when and under what conditions he could return to work at all," an employer is required to at least "consider this option." *Dark*, 451 F.3d at 1090.

For the purpose of summary judgment, there is no dispute that Hall was disabled under the ADA or that he was terminated because of his disability. Thus, Defendants' Motion challenges only the second prong of Hall's ADA claim: whether he was qualified to perform the essential functions of his position as a Captain in the District with an accommodation.[2] In support of this point, Defendants' sole argument is that Hall was unqualified for the job, even with an accommodation, because his treating doctor said that no accommodation was available. (Defs' MSJ at 11.) In support of this proposition, Defendants rely wholly on Hall's handwritten, three page "Request for Reasonable Accommodation" form, which Dr. Isakson—who was Hall's treating psychologist—completed and returned to the District. (Def's MSJ at 10; *see* Defs' SSOF Ex. 12.) Therein, Dr. Isakson wrote that "[a]ny possible accommodation would worsen [Hall's] sense of self at this time, as accommodations that are conceivable would be demotions." (Defs' SSOF Ex. 12 at 2.) Although the form indicates that Dr. Isakson's opinions were based on a description of Hall's current role, no evidence in the record shows that any member of the District ever spoke with Dr. Isakson about the range of accommodations available. (Defs' SSOF Ex. 12 at 3.)

The Court does not dispute that, in certain circumstances, a defendant should be permitted to rely on the representations of an employee's doctor that no reasonable accommodation exists. *Compare Pesterfield v. Tenn. Valley Auth.* 941 F.2d 437, 441–42

---

[2] The parties do not dispute that, due to Hall's PTSD symptoms at the time he was fired, he was incapable of performing his duties without a reasonable accommodation.

(6th Cir. 1991) (finding that reliance on employee's psychiatrist's report warranted when report was both thorough and lengthy) *with Holiday v. City of Chattanooga*, 206 F.3d 637, 647 (6th Cir. 2000) (finding that employer was not entitled to rely on third party doctor's cursory evaluation of employee). A defendant, however, cannot merely bury its head in the sand and refuse to engage with its employee in hopes that no accommodation exists. Permitting such behavior would nullify the "interactive process" that is at the heart of the ADA. *See Barnett*, 228 F.3d at 1113. Given the brevity of Dr. Isakson's comments on Hall's ADA form and the District's failure to ever speak to Dr. Isakson about the range of available accommodations, the District cannot merely rely on her opinion to survive summary judgment.

As such, two questions of fact remain which preclude summary judgment. First, Hall introduced sufficient evidence to show that a reasonable accommodation was available. In particular, Hall points to evidence that he could have been assigned to a number of light-duty assignments away from his co-workers that may have been able to accommodate him. (*See* Doc. 95-10, Pl's CSOF Ex. J, Fennell Dep. 50:18-51:15; Doc. 95-6, Pl's CSOF Ex. F, Isakson Dep. 73:6-15.) Additionally, Hall argues that the District could have provided him with additional medical leave to recover from his injury.[3] Thus, although Defendants do proffer substantial evidence to show that these accommodations would have been unsuccessful given Hall's condition at the time of his discharge, a jury rather than the Court must determine the propriety of those accommodations.

Turing to the second point, although the record indicates that the District and Hall maintained some level of communication from the time Hall first took FMLA leave

---

[3] Though Defendants do not make the argument, it appears that the District actually offered Hall the option of taking additional unpaid medical leave in both Chief Howard's June 12th and July 17th letters. (*See* Defs' SSOF Exs. 19, 22.) This, however, appears to contradict Hall's argument that he was willing to accept an unpaid leave of absence. If Defendants had demonstrated that the District offered Hall the accommodation that he claims to have requested, the Court would be inclined to grant summary judgment on that basis. Defendants, however, do not advance such an argument in their Motion. The Court thus does not consider it.

through his discharge, it remains disputed whether these discussions constitute the "interactive process" mandated by the ADA. Further, if a breakdown in the interactive process did occur, the jury must determine whether the blame for such a breakdown lies squarely with the District. As such, Hall has presented sufficient evidence to survive summary judgment on his *prima facie* case of discrimination.

### 2. Nondiscriminatory Reason for Discharge

Notwithstanding Hall's ability to state a *prima facie* case for discrimination, Defendants also argue that Hall's claims fail because Defendants had a nondiscriminatory reason to discharge him. The District contends that it was suffering financial distress due to reduced tax revenue and could not continue to pay Hall in addition to paying another firefighter overtime to cover Hall's shifts. (Defs' MSJ at 12.) By offering this explanation, the District has articulated a legitimate, nondiscriminatory reason for its action. Thus, the burden shifts back to Hall to demonstrate that the explanation is pretextual. "A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *See Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 222 F.3d 1115, 1127 (9th Cir. 2000) (applying *McDonnell Douglas* framework to Title VII action). For the purpose of summary judgment, Hall has introduced sufficient evidence from which the finder of fact could determine that the District's explanation was pretextual, as he points to evidence that the District readily paid overtime to firefighters covering for those who had suffered physical injuries. (Howard Dep. 266:1-270:5.) Although indirect evidence, it demonstrates sufficient internal inconsistency in the reasons present by the District to send the question to the jury.

Accordingly, questions of fact remain both as to Hall's *prima facie* case and as to whether the District's non-discriminatory reason for firing Hall was pretext. As such, summary judgment on Counts I and II is inappropriate at this time.

### 3. Count III: Retaliation

Just as the ADA prohibits discrimination on the basis of a disability, it prohibits discrimination against individuals who "oppose[] any act or practice" made unlawful by the ADA. 42 U.S.C. § 12203(a); *see Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003). To establish a *prima facie* case of retaliation, an employee must show that he (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) a causal link exists between the two. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

In their Motion, Defendants assert that Hall fails to satisfy the first element of a retaliation claim because he did not engage in any protected activity—namely, filing a complaint with the EEOC—until after his dismissal. (Defs' MSJ at 12.) As Hall correctly notes, however, requesting a reasonable accommodation is a protected activity that may serve as the basis for a claim of retaliation. *See Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Though not raised in the initial Motion, Defendants offer an additional basis for summary judgment in the Reply, arguing that, even if Hall's request for an accommodation was protected activity, Hall fails to demonstrate a causal connection between the request and Chief Howard's decision to fire him. (Reply at 6.) Defendants reason that because Chief Howard told Hall that he would fire him on July 31 two weeks before Hall's request for an accommodation, the request bears no causal connection to the decision to fire Hall. (Reply at 6.) However, a question of fact remains as to whether Hall requested an accommodation prior his July 30th email. In the light most favorable to Plaintiff, Hall's purported request on June 27 affords a sufficient causal connection to Chief Howard's decision to fire Hall. Accordingly, Hall states a *prima facie* case of retaliation for the purpose of summary judgment.

Additionally, as recounted in the Court's analysis of Counts I and II of the Complaint, a finder of fact must determine whether the nondiscriminatory reason offered by Defendants for Hall's firing was pretextual. The Court therefore denies the Motion as to Count III.

### 4. Individual Liability

Finally, Defendants move for summary judgment on Hall's ADA claims as those claims run against Chief Howard, as well as District Board members Nott, Doskocil, Newkirk, Stoddard and Parker. As Defendants correctly argue, "individual defendants cannot be held personally liable for violations of the ADA." *See Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006.) The Court therefore grants summary judgment to the individual Defendants on Counts I, II, and III of Hall's Second Amended Complaint.

### B. Count IV: 42 U.S.C. § 1983 Retaliation in Violation of First and Fourteenth Amendment Right to Freedom of Association

Moving to Hall's fourth Claim, Hall alleges that Defendants terminated him in retaliation for his association with, and leadership position within, the Local 1505 union. (2d Am. Compl. ¶¶ 72–80.) Although Hall broadly alleges the claim against all of the Defendants, the facts of the case make clear that each Defendant's liability greatly differs. Therefore the Court addresses Hall's first amendment retaliation claim against Chief Howard before addressing Hall's claim against the remaining Defendants.

To succeed on a First Amendment retaliation claim, a public employee must demonstrate that (1) that he engaged in protected activity; (2) that his employer took "adverse employment action"; and (3) that his activity "was a 'substantial or motivating' factor for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Defendants do not challenge the first or second prong, but argue only that Hall cannot establish that Hall's union activity was a "substantial or motivating factor" for his firing.

A plaintiff can present facts to satisfy the third prong in three specific ways. *See id.* (citing *Keyser v. Sacramento City Unif. Sch. Dist.*, 265 F.3d 741 (9th Cir. 2001)). First, a plaintiff can introduce evidence demonstrating a "proximity in time between the protected acti[vity]" and the alleged adverse action that would allow a jury to infer a causal relationship between the employee's activity and the employer's adverse action. *Id.* Courts have not set a *per se* limit on the amount of time between the protected activity

and act of retaliation, finding that "three to eight months" between the acts is sufficient in some cases to "support an inference of retaliation." *Id.* Second, a plaintiff can show that his employer "expressed opposition" to the First Amendment activity. *Id.* Finally, the plaintiff can demonstrate that "his employer's proffered explanations for the adverse employment action were false and pre-textual." *Id.* (citations omitted).

### 1. Chief Howard

Turning first to Chief Howard, Defendants argue that Hall cannot meet his evidentiary burden because the facts unquestionably show that Chief Howard knew that Hall had been a member of the union from the time he joined the District in 2006, and that he had been a union Trustee since 2009. (Defs' MSJ at 13–14.) In that time span, Howard promoted Hall, first to Acting Captain, then to Captain. (Defs' MSJ at 13–14.) Defendants thus argue that Chief Howard's prior support of Hall's career prohibits a finding that he was opposed to Hall's association with the union. (Defs' MSJ at 14.) However, evidence in the record permits the opposite finding. In particular, Hall provides evidence of an email sent by Chief Howard in February 2014 during the District's negotiation of the Memorandum of Understanding with the union. (*See* Doc. 95-11, Pls' SSOF Ex. K.) In that email, Chief Howard asks whether he can "take action against the union leadership in some manner for providing such a derisive document." (Pls' SSOF Ex. K.) Just five months after this email, Chief Howard fired Hall. Given the proximity of his email to his decision to fire Hall, sufficient evidence exists to support a finding that Hall's union association was a substantial factor in his firing.[4]

---

[4] In the Reply, Defendants proffer an additional argument in support of their Motion. Citing to this Court's decision in *Candelaria v. City of Tolleson*, No. CV-14-02123-PHX-JJT, 2016 WL 3653959 (D. Ariz. July 8, 2016), Defendants argue that Hall cannot base his claim for retaliation on the events surrounding the negotiation of the Memorandum of Understanding because the memorandum was not a matter of public concern. (Reply at 7.) The Court need not consider arguments raised for the first time in a party's reply. Nevertheless, Defendants argument is premised on a misapprehension of *Candelaria* and of Hall's Complaint. Unlike the plaintiffs in *Candelaria*, Hall has not included in the Complaint a freestanding claim for the violation of his freedom of speech, but claims only that Defendants retaliated on the basis of his association with the union. (*See* Compl. ¶¶ 72–80.) Thus, Hall has not alleged a "hybrid claim" subject to the *Connick* public concern standard. *See Hudson v. Craven*, 403 F.3d 691, 698 (9th Cir.

Defendants additionally argue that Chief Howard is entitled to qualified immunity; however, Defendants merely reiterate the arguments that the Court has addressed above. Moreover, Hall's right to be free from retaliatory acts for the exercise of his freedom of association was clearly established at the time of the alleged injury. *See, e.g.*, *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1037–38 (9th Cir. 1990). As such, the claim against Chief Howard must proceed to a jury.

### a. District Board Members

Hall, however, fails to establish a claim against the individual members of the Summit Fire Board. It is axiomatic that, under Section 1983, a defendant may not be held liable under a theory of *respondeat superior*. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability is permitted, but only "against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). As the record reflects, Chief Howard made the determination to fire Hall without the input of the Board. (Defs' SSOF ¶ 68.) Hall presents no evidence to contradict this fact, nor does he show that any member of the Board contributed to the employment decision. Although evidence in the record reflects that the members of the Board were generally aware of Chief Howard's decision to fire Hall, no evidence permits a finding that the Board Members were aware of Chief Howard's alleged anti-union sentiment. Thus, if Chief Howard's decision was at all motivated by anti-union animus, no evidence in the record indicates that the members of the Board were either aware of or acquiesced to that basis for firing Hall. Accordingly, the individual members of the Summit Fire Board are entitled to summary judgment on Count IV.

---

2005) ("[T]he application of the *Connick* public concern test is much easier here because the association in question involves a discrete event with a political orientation.").

### C. Count V: Breach of the Covenant of Good Faith and Fair Dealing

Finally, Defendants move for summary judgment on Hall's claim for the breach of the covenant of good faith and fair dealing. (Defs' MSJ at 14–15.)

Under Arizona law, "a covenant of good faith and fair dealing is implied in every contract." *Maleki v. Desert Palms Prof'l Props., L.L.C.*, 214 P.3d 415, 421 (Ariz. Ct. App. 2009). The "covenant requires that neither party act to impair the right of the other to receive the benefits that flow from their agreement or contractual relationship." *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004). "Accordingly, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to." *Id.* As such, a claim for the breach of the covenant is inherently predicated on the existence of a valid contract. *See id.*

In this case, Hall alleges that he entered into a contract with Chief Howard and the District by virtue of Chief Howard's July 17, 2015 letter. (2d Am. Compl. ¶¶ 81–87; Resp. at 13–14). In that letter, Chief Howard wrote:

> As we near the end of the month I feel the need to contact you in writing to make sure we are all clear on what options are available at the end of the month. We are two weeks away as of today so let me list what I understand your options to be and what options I have. . . . 4. You could cho[o]se to do nothing and I would terminate you on July 31. This option would allow you to collect unemployment so you would be provided with some income. If Workman's Compensation determines to support your claim they will let you and the district know by the 20th of August. Their support of your claim would make null and void your termination. . . .

(Defs' SSOF Ex. 22.)

This language, however, does not demonstrate that a contract existed between Hall, Chief Howard, and the District. At best, Chief Howard's letter can be described as a list of Hall's options with the consequences of each decision that Hall might make. *See Johnson Int'l, Inc. v. City of Phoenix*, 967 P.2d 607, 613 (Ariz. Ct. App. 1998) ("[A]n expression of intention to do something is not a promise.") The letter, however, does not contain any offer, nor does it contain any evidence of consideration. *See Roscoe v. Bankers Life Ins. Co. of Neb.*, 526 P.2d 1080, 1082 (Ariz. Ct. App. 1974). Because Hall has not shown the existence of a valid contract between himself, Chief Howard, and the

District, he cannot succeed on his claim for the breach of the covenant of good faith and fair dealing.

Further, even assuming the existence of a valid contract, Hall fails to present any evidence to demonstrate that Chief Howard or the District breached the duty of good faith. As the record demonstrates, CopperPoint unequivocally denied Hall's claim for Worker's Compensation. (*See* Defs' SSOF Ex. 14.) Although Hall argues that CopperPoint's $60,000 settlement offer constituted "support" of Hall's claim, the settlement agreement between Hall and CopperPoint makes clear that CopperPoint's offer was contingent on Hall withdrawing his appeal of the denial of his claims. (Defs' SSOF Ex. 15 at 37.) Thus, under the settlement, Hall "neither presently nor in the future" was entitled to "receive any benefits for the problems and conditions which led him to file this claim." (Defs' SSOF Ex. 15 at 38.) The Court cannot plausibly find under any reading of the word that this settlement offer constitutes "support" of Hall's worker's compensation claim. Accordingly, Defendants are entitled to summary judgment on Count V of Hall's Complaint.

## IV. CONCLUSION

With regard to Counts I and II, a genuine dispute of material fact remains as to whether the District engaged in good faith in the interactive process under the ADA and whether a reasonable accommodation was available for Hall at the time of his firing. Additionally, Hall has introduced sufficient evidence to create a dispute as to Defendants' proffered non-discriminatory reason for Hall's firing. With regard to Count III, a genuine dispute remains as to whether Hall's request for a reasonable accommodation was causally related to his discharge. Accordingly, Hall's claims under the ADA shall proceed to trial. However, the individual Defendants are entitled to summary judgment on Hall's ADA claims.

Regarding Hall's Section 1983 claim, a genuine dispute exists as to whether Hall's association with the union played a substantial factor in Chief Howard's decision to terminate Hall. As such, Count IV shall proceed to trial against Chief Howard and the

District. The Court, however, grants summary judgment to the members of the Board on Count IV.

Finally, as to Count V, Hall fails to create a genuine dispute that he entered into a contract with the District and Chief Howard. Hall additionally fails to show that either Chief Howard or the District acted in bad faith with regard to any contract that may have existed. As such, the Court grants summary judgment on Count V.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 88.) Defendants Don Howard, Howard Nott, Jim Dosckocil, Jim Newkirk, Rick Parker, and Bill Stoddard are entitled to summary judgment on Counts I, II, and III. Defendants Nott, Dosckocil, Newkirk, Parker, and Stoddard are entitled to summary judgment on Count IV. The Court additionally grants summary judgment to all Defendants on Count V of Hall's Complaint. The balance of Defendants' Motion is denied, and Plaintiff's remaining claims (Count I, II, and III against the Summit Fire District and Summit Fire District Board, and Count IV against Don Howard, the Summit Fire District, and the Summit Fire District Board) will proceed to trial.

Dated this 30th day of March, 2018.

Honorable John J. Tuchi
United States District Judge